# UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLIFTON DAIGLE** | **CIVIL ACTION** |
| **versus** | **NO. 07-9425** |
| **JEFFERY TRAVIS, WARDEN, RCC** | **SECTION: "N" (3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Clifton Daigle, is a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center, Angie, Louisiana.  On April 16, 2004, he was convicted of possession of Oxycodone[2] in violation of Louisiana law.[3]  On August 30, 2004, he was found to be a third offender and was sentenced as such to a term of seven years imprisonment.[4]  On May 6, 2005, the Louisiana First Circuit Court of Appeal affirmed his conviction, habitual offender adjudication, and sentence,[5] and the Louisiana Supreme Court denied his related writ application on January 13, 2006.[6]

After unsuccessfully seeking post-conviction relief in the state courts, petitioner filed the instant federal *habeas corpus* application.  In support of his application, he claims:

1.  Petitioner's conviction was based on evidence obtained during an illegal search and seizure;

2.  There was insufficient evidence to support petitioner's conviction; and

3.  Petitioner received ineffective assistance of counsel.

---

[2] Oxycodone is the active ingredient in the brand name drug OxyContin.

[3] State Rec., Vol. III of IV, transcript of April 16, 2004, p. 61; State Rec., Vol. II of IV, minute entry dated April 16, 2004; State Rec., Vol. II of IV, jury verdict form.

[4] State Rec., Vol. III of IV, transcript of August 30, 2004; State Rec., Vol. II of IV, minute entry dated August 30, 2004.

[5] State v. Daigle, No. 2004 KA 1933 (La. App. 1st Cir. May 6, 2005) (unpublished); State Rec., Vol. I of IV.

[6] State v. Daigle, 920 So.2d 238 (La. 2006) (No. 2005-K-1515); State Rec., Vol. I of IV.

The state concedes that petitioner's federal application is timely and that he exhausted his state court remedies.[7]

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we

---

[7] Rec. Doc. 15, p. 6.

stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an
unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court
will give deference to the state court's decision unless it "was based on an unreasonable
determination of the facts in light of the evidence presented in the State court proceeding."  28
U.S.C. § 2254(d)(2); <u>see also</u> 28 U.S.C. § 2254(e)(1); <u>Hill</u>, 210 F.3d at 485.

Facts

The first witness at trial was Sergeant Doug Sharp.[8]  He testified that, on January 10,
2004, he and Deputy First Class Jamie Bullock observed a pickup traveling between 50 and 60 miles
per hour in a posted 25 miles per hour speed zone and they stopped the truck for speeding.  Sergeant
Sharp questioned Troy Guidera, the driver, while Deputy Bullock questioned petitioner, who was
a passenger in the truck.  Upon questioning and investigation, it was determined that neither Guidera
nor petitioner had a valid driver's license and that there was an outstanding attachment for petitioner
for failure to appear on a prior traffic violation.

After petitioner was unsuccessful in attempting to have someone come to the scene
and retrieve the truck, which belonged to his mother, Sergeant Sharp informed petitioner that the
truck would be towed.  Prior to the truck being towed, a wrecker inventory sheet had to be
completed.  During the inventory search, Deputy Bullock found a syringe and a metal spoon with
burnt residue on the bottom and an unknown residue on the upper portion of the spoon.  Upon

---

[8] Sharp's testimony is found at State Rec., Vols. II and III of IV, transcript of April 14, 2004, at
pp. 101-46.

questioning by Sergeant Sharp, petitioner, who had already been advised of his <u>Miranda</u> rights,[9] claimed the items were his, that he used OxyContin intravenously, and that he was seeking treatment for his addiction.  The syringe and spoon were seized.  Following analysis, the metal spoon tested positive for Oxycodone.

Guidera was not arrested; however, petitioner was transported to the Lacombe substation and booked.  At the station, Sergeant Sharp read a <u>Miranda</u> rights form to petitioner. Petitioner signed the form twice, once indicating that he understood his rights and a second time indicating his willingness to waive those rights.   Petitioner again orally admitted that the seized items belonged to him and that he had a drug problem for which he was seeking treatment.

The second witness at trial was Deputy Jamie Bullock.[10]  Bullock testified to the basic facts in a manner consistent with Sharp's testimony.  Bullock stated that he did not hear petitioner's purported confession to Sharp, but Sharp later told Bullock of the confession.

The third witness was Troy Guidera.[11]  Guidera testified that he was driving the vehicle when it was stopped for speeding and that he did not have a valid driver's license.  He stated that petitioner told the officers that the syringe and spoon did not belong to Guidera.  Guidera also stated that petitioner told the officers he was addicted to painkillers but not specifically to OxyContin.  After Guidera's testimony, the prosecution rested its case.

---

[9] <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[10]  Bullock's testimony is found at State Rec., Vol. III of IV, transcript of April 14, 2004, at pp. 147-66.

[11]  Guidera's testimony is found at State Rec., Vol. III of IV, transcript of April 14, 2004, at pp. 166-79.

The first defense witness was Rita Hord, petitioner's mother,[12] who testified that petitioner goes to a Methadone clinic for treatment.  She also testified that the syringe found in the vehicle belonged to her sister, who is a diabetic.  Hord stated that she had no idea why the spoon was in the truck.

The second defense witness was Deandra Edwards, petitioner's girlfriend.[13]  She stated that she is a diabetic who takes insulin injections.  She testified that she legally takes OxyContin.  She said that, because of stomach problems, she can tolerate the drug only after it is melted in a spoon to burn off an aspirin component included in the OxyContin.  She could not positively identify the spoon found in the vehicle as one of hers.

Petitioner then took the stand.[14]  He reiterated the same basic facts leading to the traffic stop.  He said that he informed the officers that the syringe was in the vehicle's glove compartment; however, he was unaware of the spoon's presence in the vehicle until it was found during the search.  He testified that he told the officer that he would "take responsibility for" the spoon because he did not want Guidera to get into trouble; however, petitioner testified that it was in fact Edwards' spoon.  Petitioner stated that Sharp's testimony regarding petitioner's confession was a lie.  After petitioner's testimony, the defense rested.

---

[12]  Hord's testimony is found at State Rec., Vol. III of IV, transcript of April 14, 2004, at pp. 181-90.

[13]  Edwards' testimony is found at State Rec., Vol. III of IV, transcript of April 14, 2004, at pp. 213-26.

[14]  Petitioner's testimony is found at State Rec., Vol. III of IV, transcript of April 14, 2004, at pp. 226-52.

On rebuttal, the prosecution again called Sharp to the stand.[15]  He reiterated his testimony that petitioner expressly confessed that the syringe and spoon were his, that he used them to take OxyContin, that he was an addict, and that he was seeking help for his addiction.  Sharp said that he was "[o]ne hundred percent" certain that petitioner expressly admitted that he took OxyContin.

The final rebuttal witness was pharmacist Jerry Braswell.[16]  He stated that OxyContin has no aspirin in it.  He said that it is never to be taken after being melted, and that melting it would not remove anything from the drug which would cause an upset stomach.  He said that the only effect of melting the drug is to "break down the control-release mechanism."  He stated that there is a danger that the person might die from an overdose from consuming the drug after melting because all of the active ingredient would be absorbed immediately rather than over the normal twelve-hour release period.

### Search and Seizure

Petitioner first claims that his conviction was based on evidence obtained during an illegal search and seizure.  The state argues that claim, which is based on the Fourth Amendment to the United States Constitution, is not reviewable in this federal proceeding.  For the following reasons, this Court agrees.

---

[15]  Sharp's rebuttal testimony is found at State Rec., Vol. III of IV, transcript of April 14, 2004, at pp. 253-56.

[16]  Braswell's testimony is found at State Rec., Vol. III of IV, transcript of April 16, 2004, at pp. 4-16.

In Stone v. Powell, 428 U.S. 465 (1976), the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial." Id. at 494 (footnote omitted); see also Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002). The Stone bar applies even if the state court rulings regarding the Fourth Amendment claims were in fact erroneous. Swicegood v. Alabama, 577 F.2d 1322, 1324 (5th Cir. 1978).

In the instant case, defense counsel filed a "Motion to Suppress Evidence" on March 29, 2004.[17]  On April 14, 2004, an evidentiary hearing was held on the motion, after which the motion was denied.[18]  Petitioner challenged that ruling on direct appeal.  In rejecting the claim, the Louisiana First Circuit Court of Appeal held:

> In his first assignment of error, the defendant asserts the district court erred in denying his motion to suppress evidence. Defendant argues that the search of his truck was illegal because it was conducted without a warrant.
> Louisiana Code of Criminal Procedure article 703 provides, in pertinent part:
>
> A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
> ....
> D. On the trial of a motion to suppress filed under the provisions of this Article, the

---

[17]  State Rec., Vol. II of IV.

[18]  State Rec., Vol. II of IV, transcript of April 14, 2004, at pp. 4-87; State Rec., Vol. II of IV, minute entry dated April 14, 2004.

burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or any evidence seized without a warrant.

The Fourth Amendment to the United States Constitution and article I, § 5, of the Louisiana Constitution afford protection against unreasonable searches and seizures.  It is well settled that warrantless searches and seizures are *per se* unreasonable unless they fall within a limited number of well-delineated exceptions to the warrant requirement.  See **State v. Littleton**, 407 So.2d 1208, 1210-11 (La. 1981.

In **State v. Brumfield**, 560 So.2d 534, 536 (La. App. 1 Cir. 1990), this court noted:

Both the United States Supreme Court and the Louisiana Supreme Court have recognized a true inventory search to be an exception to the warrant requirement.  To fall within the inventory exception, however, the state must prove that the impoundment of defendant's vehicle was necessary and that the inventory of the vehicle's contents was necessary and reasonable in its scope.  (Citations omitted.)

In **State v. Rack**, 585 So.2d 1215, 1221 (La. App. 1 Cir. 1991,) this court noted:

An essential requirement to a valid inventory search is that the police must have acted in good faith in conducting the inventory, and must not have used the inventory procedure as a subterfuge for a warrantless search.  It has therefore been held that where the conduct of the police was inconsistent with its contention that the search was conducted for inventory purposes, the search is unlawful.  Another essential prerequisite to a valid inventory search is that the police must have taken lawful custody of the vehicle in the first instance.  It has therefore been held that where the circumstances show that the police had no authority to impound the vehicle, or that police

– 9 –

custodial care of the vehicle was not necessary, the inventory search was unlawful. A valid inventory search is conducted to inventory the vehicle's contents in order to safeguard them, as an incident to the vehicles necessarily being taken into lawful police custody. The justification for the inventory search of a vehicle is to protect the occupant of the vehicle against loss of his property or the law enforcement agency against the occupant's claim for the failure to guard against such loss.

First we must determine if the stop was valid and whether the vehicle was lawfully taken into custody. Defendant specifically asserts the traffic stop and the subsequent inventory search were merely a ruse to get around the search warrant requirement.

Louisiana Code of Criminal Procedure article 215.1(A) gives a law enforcement officer the authority to stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions. The United States Supreme Court addressed the constitutional reasonableness of traffic stops in **Whren v. United States**, 517 U.S. 806, 810-818, 116 S.Ct. 1769, 1722-1777, 135 L.Ed.2d 89 (1996). In **Whren**, the Court held the temporary detention of a motorist upon probable cause to believe that he has violated traffic laws does not violate the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective.

Under the Louisiana Highway Regulatory Act, no person shall operate a vehicle on any highway of this state in excess of fifty-five miles per hour, unless a lower maximum speed is posted on the highway. La. R.S. 32:61(A). Louisiana Revised Statutes 32:52 provides that:

No person shall drive or operate any vehicle upon any highway within this state unless and until he has been issued a license to do so as required by the laws of this state nor shall any person permit or allow any other person to drive or operate any vehicle owned or controlled by him upon highways of this state unless and until such other person has been

issued a license to so do as required by the laws of
this state.

In the present case, the defendant and Guidera were initially
stopped for driving 55 miles per hour in a posted 25 miles per hour
speed zone.  Upon questioning both men, however, the officers
learned that neither possessed a valid driver's license.  Accordingly,
the officers could not permit either man to operate the truck.
Defendant was permitted to call his mother to retrieve the truck, but
she was unable to locate the area where the defendant was stopped.
Therefore, Sergeant Sharp decided to have the truck towed.  In
preparation for the tow, an inventory search was conducted.  During
this search the items subject to defendant's motion were found.  It is
important to note that before the tow service arrived, the officers
received a dispatch informing them that there was a warrant
attachment for defendant.

We find the stop was valid and the truck was lawfully taken
into custody.  Accordingly, we find that the search and subsequent
seizure of the syringe and spoon were not unreasonable because they
fell under the true inventory search exception.  Therefore, the trial
court did not err in denying defendant's motion to suppress and the
evidence was properly admitted.  This assignment is without merit.[19]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning

reasons.[20]

Based on the foregoing, it is clear that petitioner was afforded a full and fair

opportunity to litigate his Fourth Amendment claim in state court.  Therefore, Stone bars this Court

from granting petitioner relief based on that claim.[21]

---

[19]   State v. Daigle, No. 2004 KA 1933, at pp. 4-7 (La. App. 1st Cir. May 6, 2005) (footnote
omitted) (unpublished); State Rec., Vol. I of IV.

[20]   State v. Daigle, 920 So.2d 238 (La. 2006) (No. 2005-K-1515); State Rec., Vol. I of IV.

[21]   The Court notes that petitioner apparently tries to avoid application of the Stone bar by
arguing that his Fourth Amendment claim was not "fully litigated" due to errors made by the state
courts.  Rec. Doc. 3, supporting memorandum, p. 5.  Although the Court rejects petitioner's

<u>Sufficiency of the Evidence</u>

Petitioner next claims that there was insufficient evidence to support his conviction.

The United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979):

---

underlying contention, it would be of no consequence even if such errors in fact occurred. Interpreting <u>Stone</u>, the United States Fifth Circuit Court of Appeals has clearly held:

> An "opportunity for full and fair litigation" means just that:  an opportunity.  If a state provides the *processes* whereby a defendant *can* obtain full and fair litigation of a fourth amendment claim, <u>Stone v. Powell</u> bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.

<u>Caver v. Alabama</u>, 577 F.2d 1188, 1192 (5th Cir. 1978) (emphasis added).  The Court of Appeals subsequently noted that the same rule applies even where a defendant in a particular case attempts to litigate a Fourth Amendment claim but the state court erroneously refuses to consider that claim, holding:

> [I]n the absence of allegations that the *processes* provided by a state to fully and fairly litigate fourth amendment claims are *routinely or systematically* applied in such a way to prevent the actual litigation of fourth amendment claims on the merits, the rational of <u>Caver</u> dictates that <u>Swicegood</u>'s application of <u>Stone</u> despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims.

<u>Williams v. Brown</u>, 609 F.2d 216, 220 (5th Cir. 1980) (emphasis added); <u>see also</u> <u>Janecka</u>, 301 F.3d at 321 ("[A]bsent additional allegations that state processes routinely or systematically are applied in such a way as to prevent the actual litigation of Fourth Amendment claims, mistakes that thwart the presentation of Fourth Amendment claims do not render the <u>Stone</u> bar inapplicable.").

It is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims.  In the instant case, petitioner does not even allege, much less demonstrate, that Louisiana state courts preclude litigation of Fourth Amendment claims.  Where, as here, there are insufficient factual allegations and proof that the state process is routinely or systematically applied in such a way as to prevent the actual litigation of such claims, the <u>Stone</u> bar applies.

In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Jackson, 443 U.S. at 319). "The Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan, 271 F.3d at 193 (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added).

Petitioner first challenged the sufficiency of the evidence to support his conviction in the state post-conviction proceedings. The state courts rejected his claim.[22] Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).

Under Louisiana law, Oxycodone is a Schedule II controlled dangerous substance. La.R.S. § 40:964, Schedule II(A)(1)(o). To support a conviction for a Schedule II drug, the prosecution must present evidence establishing beyond a reasonable doubt that the defendant was in possession of the drug and that he knowingly and intentionally possessed it. La. R.S. 40:967(C). A conviction for possession is supported if there is present "any amount of the drug"; the presence

---

[22]   State Rec., Vol. I of IV, Judgment and Incorporated Reasons for Judgment dated May 9, 2006; State v. Daigle, No. 2006 KW 2118 (La. App. 1st Cir. Dec. 11, 2006) (unpublished); State ex rel. Daigle v. State, 966 So.2d 569 (La. 2007) (No. 2007-KH-0166); State Rec., Vol. I of IV.

of drug residue on drug paraphernalia is sufficient to support a conviction.  See  State v. Sylvia, 845 So.2d 358, 361 (La. 2003).  In this case, a spoon containing Oxycodone residue was found in the vehicle in which petitioner was riding.  Sergeant Sharp testified that, after being properly advised of his rights, petitioner *twice* confessed that the spoon was his and that he was addicted to Oxycodone.  Although petitioner testified that Sharp was lying and that the spoon belonged to Edwards, the jury, as was its right, obviously found Sharp more credible and rejected petitioner's testimony.

Any rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, easily could have found that the evidence was sufficient to convict petitioner of the crime charged.  Therefore, petitioner has not demonstrated that the state court decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, under the AEDPA's deferential standard, this Court must likewise reject petitioner's claim challenging the sufficiency of the evidence.

### Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective.  In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  See Strickland, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson,

– 15 –

227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing

as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may

dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

In the state post-conviction proceedings, the state district court rejected petitioner's

ineffective assistance of counsel claim, holding:

> The defendant sets forth a claim based on ineffective assistance of counsel.  The Court has reviewed the record of this matter.  It is clear that the defendant was represented by competent counsel and his rights of due process were adequately safeguarded in the trial.  The defendant was convicted by a jury after trial.  Further, this matter was appealed and the First Circuit upheld the conviction and found no errors patent.
>
> The court finds that the defendant does not satisfy the Strickland test regarding deficiency of counsel's performance.  This claim falls for failure of the defendant to meet his burden of proof.[23]

Without reasons assigned, the claim was likewise denied by the Louisiana First Circuit Court of

Appeal[24] and the Louisiana Supreme Court.[25]  Because a claim of ineffective assistance of counsel

is a mixed question of law and fact, this Court must defer to that state court determination unless

petitioner shows that the decision was contrary to, or involved an unreasonable application of,

clearly established federal law, as determined by the Supreme Court of the United States.  28 U.S.C.

§ 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).

---

[23]   State Rec., Vol. I of IV, Judgment and Incorporated Reasons for Judgment dated May 9, 2006.

[24]   State v. Daigle, No. 2006 KW 2118 (La. App. 1st Cir. Dec. 11, 2006) (unpublished); State Rec., Vol. I of IV.

[25]   State ex rel. Daigle v. State, 966 So.2d 569 (La. 2007) (No. 2007-KH-0166); State Rec., Vol. I of IV.

All of petitioner's contentions regarding his ineffective assistance of counsel claim are related to his assertion that the spoon found in the truck belonged to Edwards. Petitioner contends that she had been told by her doctor to melt the drug on a spoon and mix it with a drink to prevent an upset stomach. Petitioner claims that his counsel was therefore ineffective in failing to (1) interview Edwards and petitioner's mother, who could have verified that the Edwards in fact took the drug in that manner, (2) investigate this method of taking OxyContin and challenge Jerry Braswell's testimony, and (3) subpoena Edwards' doctor. The Court rejects all of those contentions for the following reasons.

As to his contention regarding Edwards, petitioner fails to note that counsel was in fact aware that she allegedly took OxyContin in that manner, and he presented her testimony on that point at trial. Edwards testified as follows:

> Q.   Now, what – how often do you take the oxycontin?
>
> A.   It's twice a day.
>
> Q.   Okay.
>
> A.   As prescribed.
>
> Q.   And how do you take it?
>
> A.   Well, because of the aspirin [in OxyContin] and all, I have problems with aspirins. I have gastreoporosis, where it bothers my stomach. So I would melt – smash mine and put water in it and I will burn it until it separates the medication from aspirin, and then I would pour it into a drink that I'm drinking, so you know, it doesn't taste as bad. But I have to get the aspirin out to take it.
>
> Q.   Does Cliff take oxycontin?

A.    No.  He helps me out.  I mean, helps me to take my medicine.
      But no, I've never seen him – none of mine has ever come up
      missing, so not that I know of, no.

Q.    He helps you with oxycontin?

A.    As far as smashing it or maybe burning it for me, yes.

Q.    And how do you burn it?

A.    A lighter in the spoon, a lighter.[26]

However, Edwards was unable to positively identify the spoon from the vehicle as one of hers:

Q.    I'm going to show you this spoon.  Is that your spoon, or do
      you know?

A.    I don't know.  I can't say directly that that is mine.  But like
      I have said, I have taken spoons out of my house and brought
      them with me in order to – 'cause I carry my medication with
      me everywhere I go, so in order to use it the way I do, I do
      bring a spoon with me.

Q.    Is that a burn mark (indicating)?

A.    It looks like it.

Q.    Is that what happens to the spoon after you use it?

A.    Yes.

Q.    But you don't know about this one?

A.    No, I don't.  Like I said, from bringing it with me, you know,
      I could have left it in the car or it could have fell out of my
      box or my bag or whatever, but I do bring them with me.

Q.    Okay.  You don't know that one, you don't recognize the
      spoon?

---

[26]  State Rec., Vol. III of IV, transcript of April 14, 2004, at p. 216-17.

> A.   No.   Like I said, there's various spoons.   You have –
> everybody has different types of spoons, you know, different
> designs.  I can't just say directly that's my spoon.  But, yes.[27]

Therefore, the facts regarding Edwards' use of OxyContin were presented fully by defense counsel

at trial.  Accordingly, there is simply no basis for finding defense counsel ineffective in this respect.

Petitioner's contention regarding his mother likewise fails.   Because the mother

testified immediately before Edwards, it is fairly apparent from the record that defense counsel was

aware of the Edwards' use of OxyContin at that time and could have explored that issue with the

mother if it would have been helpful.  It is also fairly certain that the mother would not have verified

petitioner's contention regarding the use of the spoon.  On cross-examination, she was specifically

questioned regarding the spoon and she disclaimed any knowledge whatsoever of the spoon, its

presence in the vehicle, or its being used to take drugs.[28]  Therefore, petitioner can show neither the

required deficient performance the nor resulting prejudice necessary to support his claim.

As to counsel's purported failure to investigate the alleged practice of melting

OxyContin to remove the aspirin content and to challenge Jerry Braswell's expert testimony that the

drug in fact contains no aspirin[29] and is not prescribed to be taken in that manner,[30] petitioner has

---

[27]   State Rec., Vol. III of IV, transcript of April 14, 2004, at pp. 217-18.

[28]   State Rec., Vol. III of IV, transcript of April 14, 2004, at pp. 188-89.

[29]   Braswell testified as follows:

> Q.  If someone said that he or she had to melt an oxycontin pill in a spoon to
> separate aspirin from the oxcodone because the aspirin upset their stomach,
> what would be your reaction to that?

presented no evidence whatsoever in support of his bald allegations that the practice is legitimate or that Braswell's testimony was in any way incorrect.  Accordingly, petitioner's claim necessarily fails because he has failed to meet his burden to provide factual support for his allegations as to what further investigation would have revealed.  See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998).

Lastly, as to the contention that defense counsel was ineffective in failing to subpoena the Edwards' doctor, petitioner has likewise failed to meet his burden of proof with respect to that claim.  It is clear that "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (citing Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001)).  Therefore, to show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, such as the doctor, petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'" Evans, 285 F.3d at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).

---

A.  I would have to kind of chuckle, because there's nothing in oxycodone but oxycodone, there's no other component in it at all.  It's a controlled-release product with only oxycodone in it.

Q.  Does it have any aspirin in it?

A.  No.  It has nothing in it other than that drug and lactose as a filler and a control-release mechanism.

State Rec., Vol. III of IV, transcript of April 16, 2004, at p. 6.

30  State Rec., Vol. III of IV, transcript of April 16, 2004, at pp. 7-8.

Petitioner has provided no evidence whatsoever, such as an affidavit from the doctor, showing that he would have testified at trial as petitioner contends.  Accordingly, his claim necessarily fails.

In summary, petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, in light of the AEDPA's deferential standard, this Court likewise rejects that claim.

## <u>RECOMMENDATION</u>

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Clifton Daigle be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this first day of July, 2008.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**